# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40243

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2016

Lyle W. Cayce
Clerk

ZAIDA VILLARREAL,

Plaintiff–Appellant,

versus

WELLS FARGO BANK, N.A.,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES and SMITH, Circuit Judges, and FITZWATER, District Judge.*
JERRY E. SMITH, Circuit Judge:

Zaida Villarreal appeals the dismissal of her claims for breach of contract, negligence, wrongful foreclosure, and violations of the Texas Deceptive Trade Practices Act ("DTPA").  She also challenges the denial of her motion to join a non-diverse defendant.  The district court committed no error, and we affirm.

---

* District Judge of the Northern District of Texas, sitting by designation.

No. 15-40243

I.

Villarreal's ex-husband, Oscar Ballesteros, borrowed $188,000 with a promissory note from Wells Fargo Bank, N.A. ("Wells Fargo"), in March 2007 to purchase a residence at 201 Bales Road. The obligation was secured by a deed of trust ("DOT") that required payment of monthly mortgage installments and property insurance and taxes; it authorized Wells Fargo to foreclose upon default. Further, the DOT specified that Wells Fargo would send all notices to the Bales Road address unless notified by first-class mail to send them else-where. Villarreal signed the DOT but not the note.

Villarreal and Ballesteros were in divorce proceedings when they defaulted on the note and DOT; Villarreal was awarded legal possession of the house in August 2011, shortly after the default. Villarreal then became the sole obligor. She cured the default in late 2011 but was $7,386.61 in default by May 2013. Wells Fargo sent statutorily required notices of default, intent to accelerate, and acceleration to the Bales residence and Ballesteros's mother's residence. Villarreal did not cure the default, so Wells Fargo fore-closed in July 2013.

Villarreal sued Wells Fargo and a local employee in Texas state court for breach of contract, negligence, wrongful foreclosure, and violations of the DTPA. Wells Fargo removed to federal court, contending that the local employee had been fraudulently joined to defeat diversity jurisdiction, then moved to dismiss Villarreal's claims. Villarreal voluntarily dismissed the employee and moved to amend to expand on her substantive claims against Wells Fargo and to add a claim against Ballesteros for intentional infliction of emotional distress ("IIED"). The district court denied amendment on the ground that it would be futile and denied the motion to join Ballesteros.

No. 15-40243

## II.

We generally review for abuse of discretion the denial of a motion to amend. *Crostley v. Lamar Cty., Tex.*, 717 F.3d 410, 420 (5th Cir. 2013). A district court may deny a proposed amendment for futility—meaning the amended complaint would fail to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). We treat the denial of a motion to amend on such basis as we treat a dismissal under Federal Rule of Civil Procedure 12(b)(6) and review it *de novo*. *Id.* at 873; *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

When reviewing a dismissal under Rule 12(b)(6), we must "accept[] as true the well-pled factual allegations in the complaint, and construe[] them in the light most favorable to the plaintiff." *Taylor*, 296 F.3d at 378. Dismissal is proper "when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief," *id.*, or "if the complaint lacks an allegation regarding a required element necessary to obtain relief."[1]

A district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court may, however, also consider "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 498–99 (alteration in original) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Finally, we review for abuse of discretion the district court's decision

---

[1] *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

No. 15-40243

whether to allow joinder of a non-diverse, non-indispensible party. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 672, 679 (5th Cir. 2013). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.* at 672 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc)).

A.

Under Texas law, a plaintiff alleging a breach of contract must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ). Villarreal urged that Wells Fargo breached its contract by failing to send notices to her new residence at 100 East Yuma Avenue and to make automatic withdrawals from her checking account for mortgage payments. But a plaintiff must allege her own performance, because "a party to a contract who is [herself] in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990).

At no point did Villarreal plead facts supporting the second element of her breach-of-contract claim—that she performed under the contracts. In fact, the notices that Wells Fargo sent to the Bales residence—and attached to its motion to dismiss—revealed that Villarreal was in default by over $7,300. Because Villarreal failed to allege any facts showing her own performance and did not refute the facts in documents referred to in her complaint, central to her claims, and attached to the motion to dismiss, the dismissal of the breach-of-contract claim was proper.

4

No. 15-40243

B.

Under Texas law, a negligence claim "has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach." *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). Contractual relationships may create duties under contract and tort law, but "if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."[2]

Villarreal's negligence claim relies on the same conduct that gave rise to her breach-of-contract claim. She alleges Wells Fargo negligently failed to make automatic withdrawals from her checking account to pay her mortgage and negligently failed to send statutorily required notices to the Yuma residence. She never, however, asserts that either of those duties would exist but for the contract between her and Wells Fargo. Thus, any damages stemming from an alleged violation of those solely contractual duties are not redressable in tort, so the dismissal of the negligence claim was proper.

C.

A wrongful-foreclosure claim under Texas law has three elements: "(i) 'a defect in the foreclosure sale proceedings'; (ii) 'a grossly inadequate selling price'; and (iii) 'a causal connection between the defect and the grossly inadequate selling price.'"[3] The plaintiff must allege a grossly inadequate selling price in "all but a specific category of cases" where the plaintiff alleges that the

---

[2] *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.) ("Where the only duty between parties arises from a contract, a breach of this duty will ordinarily sound only in contract, not in tort.").

[3] *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).

No. 15-40243

defendant deliberately chilled the bidding at the foreclosure sale.[4]

Villarreal alleges that Wells Fargo's failure to send the statutorily required notices to the Yuma residence was the relevant defect in the fore-closure proceedings. She never alleges, however, that Wells Fargo disposed of the house at a "grossly inadequate selling price," nor does she allege that Wells Fargo fraudulently chilled the bidding at the foreclosure sale. Thus, the wrongful-foreclosure claim was properly dismissed.[5]

D.

A claim under the DTPA has three elements: "(1) the plaintiff is a con-sumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). To qualify as a consumer, the plaintiff "must have sought or acquired goods or services by purchase or lease," and those "goods or services . . . must form the basis of the complaint." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987). "[T]he key principle in determining consumer status is that the goods or services purchased must be an *objective* of the transaction, not merely incidental to it."[6]

In *Maginn*, the court refused to find that the plaintiff was a consumer

---

[4] *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 245 (5th Cir. 2015) (per curiam) (citing *Miller*, 726 F.3d at 727); *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013); *Campbell v. Bravo Credit*, 2015 WL 502234, at *4 (S.D. Tex. Feb. 5, 2015); *Charter Nat'l Bank—Hous. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

[5] *See Miller*, 726 F.3d at 727 ("Because the [chilled-bidding] exception does not apply, and because the Millers do not dispute their failure to have alleged a grossly inadequate selling price, we affirm the district court's dismissal of their wrongful foreclosure claims.").

[6] *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 166 (Tex. App.—Austin 1996, no writ) (quoting *First State Bank v. Keilman*, 851 S.W.2d 914, 929 (Tex. App.—Austin 1993, writ denied)).

No. 15-40243

when he sought credit checks and mortgage-closing assistance ("ancillary banking services") that were "typically incidental to the loan itself" and that "served no purpose apart from facilitating [the] mortgage loan." *Id.* at 166–67. Villarreal bases her DTPA claims on Wells Fargo's failure to make automatic withdrawals to pay the loan. Those "services" cannot form the basis of a DTPA claim because they are "incidental to the loan" and would "serve[] no purpose apart from facilitating [the] mortgage loan." *Id.* Thus, the dismissal of the DTPA claim was proper.

## III.

"The district court, when confronted with an amendment to add a nondiverse nonindispensible party, should use its discretion in deciding whether to allow that party to be added." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The court should "scrutinize that amendment more closely than an ordinary amendment" and "consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Id.* "[T]he court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.*

The district court concluded that Villarreal's purpose was to defeat diversity jurisdiction because she sought to add Ballesteros only after she had voluntarily dismissed her claims against Wells Fargo's local employee. Additionally, the court considered that Villarreal knew of any claims she may have had against Ballesteros long before she sought to join him. The court found that Villarreal had been dilatory because more than two months passed between the filing of her original complaint and her attempt to join Ballesteros, against

7

No. 15-40243

whom she would have known she had an IIED claim at least as early as when she filed her complaint.[7] The court concluded that Villarreal would not be significantly injured because she could pursue her unrelated IIED claim against Ballesteros in state court, and she did not challenge that finding. Finally, the court noted that interactions between Villarreal and Ballesteros may still be governed by their existing divorce decree. In short, "[t]he court [] applied the correct legal standard, and its findings of fact were not clearly erroneous[, and so i]t did not abuse its discretion . . . ." *Priester*, 708 F.3d at 679.

AFFIRMED.

---

[7] *See Gallegos v. Safeco Ins. Co. of Ind.*, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009) (listing additional cases in which courts found two-month delay to be dilatory).